**Entered on Docket**
**May 15, 2009**
**GLORIA L. FRANKLIN, CLERK**
**U.S BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



**NOT INTENDED FOR PUBLICATION**

The following constitutes
the order of the court. Signed May 14, 2009

_Marilyn Morgan_
**Marilyn Morgan**
**U.S. Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 06-50441-MM |
| **MICHAEL J. SCHNEIDER,** | Chapter 11 |
| Debtor. | **MEMORANDUM DECISION AND ORDER ON FINAL APPLICATION FOR COMPENSATION AND REIMBURSE-MENT OF EXPENSES BY CAMPEAU GOODSELL SMITH, ATTORNEY FOR COMMITTEE** |

### INTRODUCTION

Campeau Goodsell Smith, A Law Corporation, seeks a final award of compensation and reimbursement of expenses incurred as counsel for the former committee of unsecured creditors. Although the firm incurred $224,219.50 in legal fees, it requests approval of $146,536.75 of the fees incurred. For the reasons that follow, counsel is awarded fees in the amount of $79,497 and expense reimbursement of $2,324.13. The application is denied in all other respects.

### FACTUAL BACKGROUND

Michael Schneider was the principal and sole shareholder of California Plan, Inc., a mortgage brokerage company that solicited private investors to make secured real estate loans. Schneider was an account executive for California Plan at the time he purchased the business from its founder in 1993.

1

By the late 1990s, California Plan had begun diverting funds without the investors' knowledge or consent. California Plan operated as a Ponzi scheme, servicing existing loans with new funds from investors. Although it did make some legitimate loans, not all investors were secured.

Schneider diverted funds from California Plan and its investors, commingled them with his personal funds and used them to acquire assets in his own name. He testified under oath that funds from various sources had been irretrievably commingled for a very long time. His fraudulent scheme escaped detection for many years because the borrowers did not pay the investors directly. It was revealed when California Plan stopped making payments to investors in early 2006. Schneider pled no contest to one hundred seventy-three felony counts and is now serving a twenty-eight year sentence in state prison.

Investors filed involuntary chapter 7 petitions against both Schneider and California Plan on March 24, 2006. On motion by the petitioning creditors, the appointment of chapter 11 trustees was ordered in both cases on April 4, 2006. The United States Trustee selected Kyle Everett to serve as trustee in this case and Andrea Wirum to serve in the California Plan case. While the estate of California Plan had relatively limited assets, the Schneider estate included approximately twenty-five parcels of real property held directly or through limited liability companies and various other assets. Everett decided to administer this case in chapter 11. Wirum moved to convert the California Plan case to chapter 7, obtaining a conversion order on July 11, 2006. She alleged claims for the imposition of a constructive trust based on Schneider's misappropriation of California Plan's assets for his personal use.

While both Schneider and California Plan have some trade creditors, the claims of defrauded investors constitute the vast majority of claims in the cases. There is substantial overlap among creditors in both cases. Since claims of more than $85 million far exceeded the assets available, it became apparent near the inception of the cases that creditors would receive only minimal distributions on their claims.

Based on the time records accompanying this application, Scott Goodsell, a principal of Campeau Goodsell Smith, was first contacted by one of the defrauded investors on July 25, 2006 concerning the appointment of a creditors' committee in this case. Thereafter, Goodsell met with certain other defrauded investors on August 1, 2006 to discuss the formation of a committee. The United States

2
**MEMO. DECISION AND ORDER ON FINAL APPLICATION OF CAMPEAU GOODSELL**
Case: 06-50441   Doc# 984   Filed: 05/14/09   Entered: 05/15/09 13:49:37   Page 2 of 14

Trustee appointed a committee of unsecured creditors on August 22, 2006.

The same day the committee was appointed, Goodsell commenced drafting an outline of a chapter 11 plan. By September 18, 2006, he had completed a draft plan and disclosure statement. However, the proposed plan was never filed with the court. Reportedly, the plan would have wrested control of the disposition of estate assets from the trustee in favor of the defrauded investors. Counsel for Wirum notified Goodsell on September 27, 2006 that she would not join the committee as a plan proponent or consent to reconversion of the California Plan case to chapter 11. The Schneider trustee also declined to support the plan. Notwithstanding, Goodsell continued to prosecute the unfiled plan. He also prepared but did not file a motion to reconvert the California Plan case to chapter 11.

Nearly two months after the commencement of services, the firm submitted its employment application and Bankruptcy Rule 2016(b) disclosure statement on September 20, 2006. At a hearing held October 6, 2006, many present, including the court, expressed concern about runaway administrative costs and questioned the necessity of committee representation given that a trustee had been appointed. Surprisingly, trustee's counsel supported the application, commenting that separate representation would assist communications between the trustee and the numerous creditors. An order appointing Campeau Goodsell Smith as counsel to the committee was entered on October 11, 2006.

At the October 6th hearing, it became apparent that the two trustees and the Schneider committee were pursuing disparate approaches to estate administration. The parties were directed to meet with the United States Trustee to develop a consolidated approach to the administration of the estates that would conserve the limited assets for the benefit of creditors. To that end, the parties met in early October 2006. They made no progress with the committee in resolving any matters. By that time, the committee consisted solely of defrauded investors after the sole trade creditor resigned.

The trustees, on the other hand, were able to settle the claims between the estates. The settlement allocated to the California Plan estate fifty-five percent of the proceeds of liquidation of assets in the Schneider estate, net of administrative expenses and priority claims, while reserving forty-five percent for this estate. Importantly, it also contemplated that the Schneider trustee would liquidate the assets in this estate while the California Plan trustee would conduct the review of the joint fraud claims. In that way, the compromise eliminated some of the expenses of dual administration.

The trustee began liquidating real estate, requesting court approval of the sales of the first two properties at a hearing on October 27, 2006. However, on behalf of the committee, Goodsell disagreed with the trustee's timing of the sales. To maximize the sales prices, he preferred instead to retain the properties although the estate had no means to service the debt. Goodsell objected to the sales, arguing that the estate had no legitimate interest in assets acquired through fraud and that the properties were subject to a constructive trust for the benefit of the defrauded investors. He asserted that the estate's potential priority tax liability based on undeclared fraud income would not attach to the sales proceeds if the defrauded investors, rather than the trustee, sold the properties. Without explanation, he also contended that the defrauded investors would be able to assert a higher basis than the estate, reducing the capital gains liability. Finally, he challenged the sales prices as below market value.

The trustee responded to the objections, incurring substantial professional fees. He challenged the committee's authority to prosecute the constructive trust claims on behalf of either the estate or individual defrauded investors. He further argued that imposition of a constructive trust would subvert the bankruptcy policy of ratable distribution and was untenable absent strict tracing. He submitted that the committee may be in breach of its fiduciary duty to non-fraud creditors by pursuing the constructive trust claims. The trustee also asserted that the committee's allegations concerning the potential tax implications to the estate had no bearing on the propriety of the sales. Finally, he contended that the properties had been diligently marketed. The trustee articulated a sound business justification for each of the sales, showed that the properties had been adequately marketed, and established that the terms were fair and reasonable, so the sales were approved.

The trustee presented in quick succession several other real estate sales that were approved. However, the committee, through Goodsell, objected to each and every one of the successive sales through January 2007 based on the same arguments. At a hearing on December 11, 2006, the committee attempted to trace funds directly from defrauded investors, as a group, to multiple properties in Kings Beach near Lake Tahoe but was unable to overcome the presumption that Schneider acquired the properties with estate funds. I repeated the concerns that the committee's pursuit of the imposition of a constructive trust on estate assets was in derogation of its fiduciary duties to unsecured creditors generally. Goodsell's time records reveal that the United States Trustee expressed similar concerns and

4

**MEMO. DECISION AND ORDER ON FINAL APPLICATION OF CAMPEAU GOODSELL**
Case: 06-50441   Doc# 984   Filed: 05/14/09   Entered: 05/15/09 13:49:37   Page 4 of 14

threatened to disband the committee.

At a hearing held January 5, 2007 on the sale of two additional properties, I stated unequivocally that the committee was in breach of its fiduciary duties by pursuing the constructive trust theory because the remedy would serve only the interests of the defrauded investors. The United States Trustee dissolved the committee on January 9, 2007. Notwithstanding its dissolution, the committee appealed the order approving the sale of the Kings Beach properties but subsequently abandoned the appeal.

Goodsell concluded his representation in January 2007 upon the dissolution of the committee. During his representation, among the services he rendered to the committee were to prepare for and conduct committee meetings, address committee governance issues, generally review and evaluate assets and claims, review the documents produced and deposition transcripts, review the trustee's monthly operating reports, review the trustee's tax analysis, review the settlement with the California Plan trustee, review the claims by and against the debtor's spouse, prepare for and participate in a settlement conference with the trustees, evaluate and prepare objections to the trustee's sale motions, prepare a plan of reorganization proposed by the committee, conduct an investigation of constructive trust claims, review and object to the interim applications for compensation by the chapter 11 trustee and his professionals, and prepare his own employment and fee applications.

Goodsell's application elicited multiple objections from the United States Trustee, former members of the committee, other defrauded investors, and the chapter 7 trustee. The United States Trustee argues that many of counsel's services were unnecessary and duplicative of the trustee's and that Goodsell should have exercised a more restrained approach in this case. Both the United States Trustee and the chapter 7 trustee argue that the committee should have appealed the first sale rather than object to all the subsequent sales. The United States Trustee further argues that all fees attributable to preparation of the committee's reorganization plan should be disallowed since the plan was never filed and had no chance of success. Lastly, it contends that the committee did not have a sound legal basis for the constructive trust theory it pursued.

The chapter 7 trustee contends that this should have been a liquidation case and that the committee's promotion of a reorganization plan and constructive trust theory failed from the outset. She submits that counsel's services sought to advance the position of individual committee members, a

5

course that served only to increase administrative expenses.

The Aspromonte creditors, who filed the involuntary petitions, submit that the court should award no fees but only expense reimbursement. They assert that Goodsell misled the committee, raising false hopes among investors without any real likelihood of success, and unnecessarily increased administrative expenses. Former committee members Saaed Fazeli, Anthony Poch, Mel Nashban, and John Lucena also contend that Goodsell's services ultimately wasted time and resources.

Goodsell responds that the committee directed the course of his actions and that all actions taken were approved by unanimous vote, except for the appeal of the sale of the Kings Beach properties, for which there was only one dissent. He asserts that he advised committee members of their fiduciary duties and that at no time did members violate their duties. Saaed Fazeli, the former chairman of the committee, disputes Goodsell's contention that the committee directed his actions. Fazeli contends that the individual committee members did not have sufficient legal knowledge and that Goodsell made the decisions for the committee.

## DISCUSSION

Section 1103(a) of the Bankruptcy Code authorizes a committee to employ with court approval attorneys and other professionals to perform services for the committee. 11 U.S.C. § 1103(a). Section 330(a) authorizes an award of reasonable compensation for actual, necessary services rendered and reimbursement of actual, necessary expenses to a professional employed under §§ 327 or 1103. 11 U.S.C. § 330(a)(1). Compensation is expressly prohibited for services that were not reasonably likely to benefit the estate or were not necessary to the administration of the case. Id. at § 330(a)(4)(A). To be compensable, counsel must demonstrate that its services were necessary and reasonable. Unsecured Creditors' Committee v. Puget Sound Plywood, Inc., 924 F.2d 955, 958 (9th Cir. 1991).

In the case of a committee, services are necessary if they were rendered in connection with the committee's performance of its functions under § 1103(c). In re Lifschultz Fast Freight, Inc., 140 B.R. 482, 485 (Bankr. N.D. Ill. 1992). Section 1103(c) provides that a committee may, *inter alia*:

(1) consult with the trustee or debtor in possession concerning the administration of the case;
(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the

6

**MEMO. DECISION AND ORDER ON FINAL APPLICATION OF CAMPEAU GOODSELL**
Case: 06-50441   Doc# 984   Filed: 05/14/09   Entered: 05/15/09 13:49:37   Page 6 of 14

operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan; and

(3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan. 11 U.S.C. § 1103(c). However, that a committee is authorized to take such actions is not a *carte blanche* for the committee's professionals to run up legal fees. In re Thrifty Oil Co., 205 B.R. 1009, 1020 (Bankr. S.D. Cal. 1997). To be necessary, services must aid in the administration of the case and help the client fulfill its duties under bankruptcy law, whether or not they result in a monetary benefit to the estate. Lifschultz Fast Freight, 140 B.R. at 488.

Counsel must exercise billing discretion to include in a request only those fees that are reasonable. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). To determine whether fees are reasonable, the considerations are the nature, extent, and value of the professional's services, taking into account all relevant factors, including whether the services were necessary to the administration of the case, whether they were beneficial toward the completion of the case at the time rendered, and whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed. 11 U.S.C. § 330(a)(3). The court must also examine the circumstances and the manner in which services are performed and the results achieved in order to arrive at a determination of a reasonable fee allowance. In re Mednet, 251 B.R. 103, 108 (B.A.P. 9th Cir. 2000). A critical factor is the extent of success in the case. Hensley v. Eckerhart, 461 U.S. at 436.

In exercising billing discretion, counsel has a duty to analyze and make a careful judgment which claims to pursue and the degree of vigilance to devote, with the key objective being to maximize the net value of the estate. See In re Taxman, 49 F.3d 310, 315 (7th Cir. 1995). This requires a strategic consideration of whether the probable cost of legal services is disproportionately large in relation to the size of the estate and the reasonably anticipated recovery. Puget Sound Plywood, 924 F.2d at 959-61. When the fees are disproportionate to the potential benefit generated by the services, counsel must balance his or her efforts accordingly. See Taxman, 49 F.3d at 314-16.

The applicant bears the burden of establishing its entitlement to an award and demonstrating that

its fees are reasonable. <u>Hensley v. Eckerhart</u>, 461 U.S. at 437. As a guardian of the estate's funds, a court must review an applicant's request to ensure that the fees conform to the parameters set forth above. <u>In re Park-Helena Corp.</u>, 63 F.3d 877, 880 (9th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1049 (1996); <u>Mednet</u>, 251 B.R. at 108; § 330(a)(2). It may decline to award fees that are not justified on a cost-benefit analysis. <u>In re Riverside-Linden Inv. Co.</u>, 925 F.2d 320, 322-23 (9th Cir. 1991).

While some of Goodsell's services are compensable under this standard, in particular preparation for and conducting committee meetings, attendance at the chapter 11 status conference, review of and preparation of an objection to the first interim applications for compensation by the chapter 11 trustee and his professionals, and preparation of his own employment application and fee application, others do not satisfy the requirements of reasonableness and necessity to the administration of the case. Areas in which there were significant problems are described below.

**A. Fees Attributable to Committee Administration Are Excessive.**

Goodsell incurred $17,097 in fees in connection with committee administration. This category includes services relating to committee governance, such as addressing duties, composition, and furnishing instructions and a manual to members. It also includes the preparation of agendas and outlines of issues for and conducting committee meetings, attendance at the chapter 11 status conference, communications with the United States Trustee, and monitoring and communicating with the committee concerning the status of proceedings. However, a sizeable portion of the fees billed to this project category involved services related to an analysis of the United States Trustee's threat to dissolve the committee and planning the committee's strategy with respect to the plan and the constructive trust claims, an approach that was not well founded from the outset. Not all the services in this project category promoted the interests of the committee or served to increase the return to the unsecured creditor class. In a case in which a limited distribution to creditors is anticipated, counsel should have adopted a more restrained approach and scaled the services to be commensurate with the size of the estate and the expected recovery. <u>See</u> <u>Puget Sound Plywood</u>, 924 F.2d at 959-61. Fees of $7,500 are allowed in this category, and the balance of $9,597 is disallowed.

**B. Fees Attributable to Chapter 11 Operations Are Excessive.**

Goodsell incurred $27,078 in legal fees attributable to chapter 11 operational issues. This is a

8

**MEMO. DECISION AND ORDER ON FINAL APPLICATION OF CAMPEAU GOODSELL**
Case: 06-50441    Doc# 984    Filed: 05/14/09    Entered: 05/15/09 13:49:37    Page 8 of 14

broad category that encompasses issues such as dischargeability, licensure, tax liability, and cash collateral obligations. Goodsell also billed to this category his review of the monthly operating reports, review of documents produced and deposition transcripts, and evaluation of miscellaneous assets. An independent review of this project category reflects that these services can be broken down as follows:

| Description | Hours | Amount |
| --- | --- | --- |
| Settlement with California Plan Trustee | 11.70 | $4,650.00 |
| Spreadsheet of Assets and Claims | 2.80 | 1,120.00 |
| Aiding and Abetting Claims Against Third Parties | 14.63 | 5,438.00 |
| Deborah Schneider's Claims | 3.90 | 1,560.00 |
| California Plan's Constructive Trust Claims | 2.20 | 859.00 |
| Tax Liability | 3.30 | 1,320.00 |
| Settlement Conference | 15.30 | 6,092.00 |
| Miscellaneous Operational Issues | 15.50 | 6,039.00 |
| **TOTAL** | | **$27,078.00** |

The amounts incurred in certain sub-categories are surprisingly large in view of the modest return anticipated to creditors in this case. First, eleven hours to review the proposed settlement with the California Plan estate is too much time. The sum of $3,000 is sufficient to conduct a reasonable review and analysis of the settlement terms on behalf of the committee. The balance in the amount of $1,650 is disallowed.

Goodsell incurred $5,438 in fees to analyze the committee's potential claims against third parties for aiding and abetting the debtor's fraud. However, the committee never asserted these claims. Research would have quickly revealed that it was unlikely that the committee had standing to assert them. See In re Folks, 211 B.R. 378, 384-88 (B.A.P. 9th Cir. 1997). For these reasons, a reduced amount of $2,500 is allowed, and the balance of $2,938 is disallowed.

Goodsell incurred $6,092 in fees in connection with a meeting with the California Plan trustee and the trustee in this case to pursue a potential settlement. In preparation, he generated an agenda and list of issues to address as well as consulted with his clients to plan a strategy. He contends that when he and the committee chairman arrived for the meeting, they learned that the estates had already reached

9

a tentative settlement. Given the committee's concern that litigation between the two estates would consume the remaining assets of the estate, one would have expected Goodsell to embrace the opportunity of a settlement. Instead, he was intractable in the various positions asserted on the committee's behalf. Indeed, no progress was made at the meeting with respect to the issues raised by the committee. Thereafter, Goodsell unsuccessfully pursued the possibility of a judicial settlement conference. The time spent in this sub-category was more than necessary, especially in light of the failed efforts. Reduced fees of $4,000 are allowed with the remainder of $2,092 disallowed.

**C. Fees Attributable to the Real Property Transactions Are Excessive.**

Goodsell incurred $71,820 in fees to evaluate and object to the trustee's proposed asset sales. He voluntarily reduced the request by fifty percent and seeks an allowance of $35,910 in fees attributable to services relating to the real property transactions. This category includes the review of Bankruptcy Rule 2004 transcripts for information concerning the assets, the review of offers and valuations of the properties, assembling evidentiary support for the committee's objections, the review of the trustee's responses, attendance at the sales hearings, and prosecution of the appeal of the Kings Beach sale.

Notwithstanding the broad deference afforded the trustee's administration of the case and the prior approval of the sales proposed by the trustee, Goodsell continued to aggressively prosecute the same objections to three subsequent sales. This approach to the real property sales was not effective, but instead interfered with the trustee's administration. It drove up substantially the legal costs to the estate. For these reasons, a reduction is appropriate. A fee of $20,000 attributable to the trustee's proposed sales of real properties is allowed. The balance of the fees requested in this category, $15,910, is disallowed.

**D. Fees Attributable to the Committee's Reorganization Plan Are Disallowed in Their Entirety.**

Goodsell incurred $37,640 in fees to develop and draft the unfiled reorganization plan. He voluntarily reduced his request by fifty percent and seeks an allowance of $18,820 in fees for these services.

There is conflicting evidence whether the committee authorized drafting a plan. Authorized or not, counsel has an independent duty to determine whether a proposed course is likely to benefit the

10

constituents to which counsel owes a fiduciary duty or will merely cause delay. See In re Perez, 30 F.3d 1209, 1219 (9th Cir. 1994). See also Thrifty Oil, 205 B.R. at 1018-19 (professional has independent duty to question directive of committee).

Here, the committee's proposed plan never gained any traction from its inception. Goodsell should have been aware of the imprudence of putting pen to paper and incurring the expense of drafting a plan before he was even appointed and without first negotiating with other interested parties whose participation and cooperation were essential to confirmation. It was apparent by September 2006 that prosecuting the committee's plan would be too costly because the committee did not have the support of both trustees. The proposed plan raised false hopes of a larger recovery and increased administrative expenses unnecessarily. Failure to fulfill counsel's responsibility to "lead the estate on a just, speedy, inexpensive and lawful path out of bankruptcy" may result in a reduction in allowable fees. Perez, 30 F.3d at 1219. The requested fees of $18,820 incurred in connection with the committee's proposed plan are not reasonable and are disallowed in their entirety.

**E. Fees Attributable to the Constructive Trust Investigation Are Excessive.**

Goodsell incurred fees of $45,905.50 to conduct an investigation in support of the committee's constructive trust claims. He has voluntarily reduced his fee request in this category by fifty percent to $22,952.75.

Once again, it is disputed whether the committee knowingly authorized Goodsell to pursue this theory. Here, Goodsell's strategy to pursue the constructive trust claims was not well grounded and did not serve his clients' interests. See id. The evidence indicated that the debtor's personal funds, the funds of California Plan and that of third parties had been irretrievably commingled for a very long time and were incapable of being traced, which is a prerequisite to the imposition of a constructive trust. In re Advent Mgmt Corp., 104 F.3d 293, 296 (9th Cir. 1997). Goodsell also had legal obstacles to the imposition of a constructive trust since the committee lacked standing to assert the claims. See Folks, 211 B.R. at 384-88. Finally, the committee's pursuit of the constructive trust claims appears to have been in violation of its fiduciary duty to its entire constituent class of unsecured creditors. See, e.g., Westmoreland Human Opportunities, Inc. v. Walsh, 246 F.3d 233, 256 (3d Cir. 2001)(committee member's pursuit of self interest in assuming debtor's grant rights violates fiduciary duty to

11

**MEMO. DECISION AND ORDER ON FINAL APPLICATION OF CAMPEAU GOODSELL**
Case: 06-50441   Doc# 984   Filed: 05/14/09   Entered: 05/15/09 13:49:37   Page 11 of 14

constituents).

Fees of $10,000 in this category are sufficient to conduct a reasonable investigation on behalf of the committee of the constructive trust issue and the merits of the claims. The balance in the amount of $12,952.75 is disallowed.

**F. Reviewing Time Records is Not Compensable.**

Goodsell incurred $3,080 in fees to review his time records in connection with his preparation of this application. While preparation of the application is compensable, reviewing time records to ensure their compliance with the court's standards is considered an administrative function and is not compensable from the estate. See In re CF & I Fabricators of Utah, Inc., 131 B.R. 474, 485 (D. Utah 1991). Consequently, the $3,080 in fees attributable to this task is disallowed.

## CONCLUSION

For the reasons set forth herein, the applicant is awarded fees in the amount of $79,497 and expense reimbursement of $2,324.13. The application is denied in all other respects.

IT IS SO ORDERED.

* * * **END OF ORDER** * * *

12

**MEMO. DECISION AND ORDER ON FINAL APPLICATION OF CAMPEAU GOODSELL**
Case: 06-50441   Doc# 984   Filed: 05/14/09   Entered: 05/15/09 13:49:37   Page 12 of 14

Case No. 06-50441-MM

**COURT SERVICE LIST**

SCOTT L GOODSELL
CAMPEAU GOODSELL SMITH
440 N FIRST STREET SUITE 100
SAN JOSE CA 95112

BILL ASPROMONTE
690 OSCEOLA AVENUE #307
WINTER PARK FLA 32789

DAN ASPROMONTE
c/o 690 OSCEOLA AVENUE #307
WINTER PARK FLA 32789

ELENA ASPROMONTE
c/o 690 OSCEOLA AVENUE #307
WINTER PARK FLA 32789

SAEED FAZELI
PO BOX 9202
SAN JOSE CA 95157

MEL NASHBAN
525 MCLEAN LANE
SANTA BARBARA CA 93108

ANTHONY POCH
ANN POCH
3235 JENKINS AVE
SAN JOSE CA 95118

MICHAEL A ISAACS
CHARLES P MAHER
LUCE FORWARD HAMILTON &SCRIPPS
RINCON CENTER II
121 SPEAR STREET SUITE 200
SAN FRANCISCO CA 94105-1582

WILLIAM J LAFFERTY
HOWARD RICE NEMEROVSKI CANADY
FALK & RABKIN
3 EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO CA 94111

EDWINA E DOWELL
NANETTE DUMAS
OFFICE OF THE US TRUSTEE
280 SOUTH FIRST ST ROOM 268
SAN JOSE CA 95113

CHARLES B GREENE
LAW OFFICES OF CHARLES B GREENE
84 WEST SANTA CLARA ST SUITE 770
SAN JOSE CA 95113